IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| NICHOLAS and STEPHANIE DADGOSTAR | ) | |
| | ) | |
| Plaintiffs, | ) | CIV. NO.: 1:10-cv-00028 |
| v. | ) | |
| | ) | |
| ST. CROIX FINANCIAL CENTER, INC., | ) | |
| KEVIN M. BRANDT, WARREN MOSLER, | ) | |
| PAUL H. SAUNDERS, FINISH FISHING, | ) | |
| her tackle, gear, and all appurtenances, in rem, | ) | |
| EDELFONSO GARCIA, JOHN DOE, and | ) | |
| ABC CORP., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

THIS MATTER comes before the Court on Defendants St. Croix Financial Center, Kevin M. Brandt, Warren Mosler, and Paul H. Saunders' Motion to Dismiss Complaint and Motion to Strike Affidavit of Nicholas Dadgostar.[1]  After renting snorkel gear from Defendant St. Croix Financial Center, doing business as the Tamarind Reef Hotel, and being advised by the hotel that he could swim through the Green Cay Channel to a nearby island, Plaintiff was struck by *in rem* Defendant *Finish Fishing*, a fishing boat owned and piloted by Defendant Garcia, as he was swimming back from the island.  Plaintiff sues St. Croix Financial Center and its individual owners, Brandt, Mosler and Saunders, for negligently failing to warn him about the risks associated with snorkeling in the channel.  He also sues the *Finish Fishing* and her owner for negligence.  Defendants St. Croix Financial Center, Brandt, Mosler, and Saunders move to dismiss his claims on the grounds they owed him no duty to warn.  Defendants Brandt, Mosler

---

[1] Edelfonso Garcia and the *Finish Fishing* join in Defendants' Motion to Dismiss.

and Saunders, also move to dismiss on the grounds that Plaintiff has failed to plead facts sufficient to pierce the corporate veil.  All Defendants move to dismiss Plaintiff and his wife's loss of consortium claim on the basis that it is not a recognized cause of action under admiralty law.  Defendants also move to strike the Plaintiff's affidavit filed in support of his opposition to their motion to dismiss.  For the reasons discussed below, the Court grants in part and denies in part Defendants' Motion to Dismiss and grants Defendants' Motion to Strike.

## I.   **The First Amended Complaint**

On April 19, 2009, Plaintiff Nicholas Dadgostar ("Plaintiff"), an active member of the United States Air Force, and several other airmen traveled to St. Croix for a "crew rest." (First Amended Complaint ("FAC") ¶¶ 29-30, ECF No. 10)  After registering at the Club Comanche Caribbean Hotel, Plaintiff and the airmen went to the Tamarind Reef Hotel.[2]  (*Id*. at ¶¶ 30-31)  At the Tamarind Reef Hotel, they visited the "Scuba Shack," a hut located on the beach at the hotel, and inquired Susan Greenhalgh, a hotel employee working at the Scuba Shack, about snorkeling off the beach adjacent to the hotel.  (*Id*. at ¶ 31)  Greenhalgh pointed to an area known as the "Green Cay Channel" and stated that the "cove" was a good place to snorkel.  (*Id*. at ¶ 32)  Plaintiff and one airman inquired of Greenhalgh whether they could snorkel near an island across the Green Cay Channel which was visible in the distance from the Scuba Shack.  Greenhalgh replied, "Yes, people do it all the time."  (*Id*. at ¶ 34)  Despite being aware of at least one prior incident wherein a vessel struck a snorkeler in the area, Greenhalgh did not warn Plaintiff that there was motor boat traffic in the Green Cay Channel.  (*Id*. at ¶¶ 54-56)

---

[2] Plaintiff alleges that Defendant St. Croix Financial Center, Inc., does business under the names Tamarind Reef Hotel and Green Cay Marina.  (FAC ¶ 6)

Plaintiff and five other airmen rented snorkel equipment from Greenhalgh at the Scuba Shack.  (*Id*. at ¶ 33)  After renting the equipment to Plaintiff and the other airmen, Greenhalgh escorted them to a place where she indicated that they could safely enter the water and begin snorkeling. (*Id*. at ¶ 36)   The airmen split off into two groups of three, and, based on Greenhalgh's earlier representations, Plaintiff's group began swimming through the Green Cay Channel toward the island.  As they swam, they did not see any boats or other vessels. They then decided to turn back because the island was too far.  (*Id*. at ¶ 37)  As Plaintiff swam back toward the shore through the channel, he was struck by a commercial fishing vessel known as *in rem* Defendant *Finish Fishing*, owned and operated by Defendant Garcia.  (*Id*. at ¶ 38)  As a result of the propeller strike, Plaintiff suffered severe and permanent injuries.  (*Id*. at ¶¶ 42-44)

The FAC contains eight causes of action: (I) negligence; (II) failure to warn; (IV) "Res Ipsa Loquitor;" (V) gross negligence and punitive damages; (VI) strict liability; (VII) "Restatement § 314;" and (VIII) loss of consortium.[3]  Defendants St. Croix Financial Center (the "Tamarind Reef Hotel"), Brandt, Mosler, and Saunders (collectively the "Tamarind Reef Hotel Defendants") seek dismissal of all of the claims against them on the basis that the FAC fails to adequately state causes of action.  Additionally, Brandt, Mosler, and Saunders (the "hotel owner Defendants") move to dismiss the claims on the grounds that FAC fails to allege facts sufficient to pierce the corporate veil.

---

[3] Plaintiffs' third cause of action is a negligence claim against the *Finish Fishing* and its owner Edelfonso Garcia.  That cause of action is not a subject of this Motion to Dismiss.

II. <u>**Analysis**</u>

    a. **Motion to Dismiss Standard**

When presented with a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6):

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Thomas v. Rijos*, __F. Supp. 2d__, 2011 WL 1637471, at *2 (D.V.I. April 29, 2011) (Finch, J.) (citing *Acosta v. Hovensa, LLC*, 53 V.I. 762, 770 (D.V.I. 2010)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).

"A district court may grant the motion to dismiss only if, accepting all factual allegations as true and construing the complaint in the light most favorable to plaintiff, it determines that plaintiff is not entitled to relief under any reasonable reading of the complaint." *Thomas*, 2011 WL 1637471 at *2 (quoting *Acosta*, 53 V.I. at 770). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McTernan v. City of York*, 577 F.3d 521, 531 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, __U.S.__, 129 S. Ct. 1937, 1950 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 263 (3d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1949).

4

Additionally, a "district court [] ruling on a motion to dismiss . . . [is] not permitted to go beyond the facts alleged in the Complaint and the documents on which the claims made therein were based." *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1424-25 (3d Cir. 1997); *see also Glasgow v. Veolia Water North America Operating Services LLC*, 2010 WL 3780966, at *2 (D.V.I. 2010) (same).  "A document forms the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.'"  *Lum v. Bank of America*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *Burlington Coat Factory*, 114 F.3d at 1426).

### b.  Motion to Strike

In opposition to Defendants' Motion to Dismiss, Plaintiff Nicholas Dadgostar filed an affidavit providing further details about the events leading up to his injuries.  (ECF No. 58-1)  In their reply in support of their Motion to Dismiss and in their Motion to Strike, Defendants urge the Court to not consider this affidavit in ruling on their Motion to Dismiss.   Because the affidavit is neither integral nor explicitly relied upon in the Complaint, the Court will not consider it in ruling on Defendant's Motion to Dismiss and will grant the Motion to Strike. *Burlington Coat Factory*, 114 F.3d at 1426; *Velazquez v. American Airlines*, 2011 WL 3652334, at *2 (D.V.I. Aug. 18, 2011) (refusing to consider documents attached to plaintiff's opposition to a motion to dismiss that were not relied on in complaint); *Glasgow*, 2010 WL 3780966, at *2 (refusing to consider an affidavit filed by the plaintiff in opposition to a motion to dismiss); *see also Christaldi-Smith v. JDJ, Inc.*, 367 F. Supp. 2d 756, 762 (E.D. Pa. 2005) (refusing to consider employer's affidavit and documents in support of its position that it did not meet Title VII's numerosity requirement on a motion to dismiss).

### c.   Loss of Consortium Claims

Because it has jurisdictional and conflict of law implications, the Court begins with Defendants' attack on Plaintiffs' loss of consortium claims.  In the FAC, Plaintiff and his wife invoke this Court's jurisdiction under both diversity (28 U.S.C § 1332) and admiralty grounds (28 U.S.C. § 1333).  (FAC ¶¶ 1-2).  Defendants argue that Plaintiffs' invocation of admiralty law is, by itself, a sufficient basis to apply admiralty law to their loss of consortium claims. However, before a court can apply admiralty law, the claim must be sustainable under the court's admiralty jurisdiction.  *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 23 (2004).  In other words, this Court "has an independent duty to ensure admiralty jurisdiction exists before applying admiralty law." *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 899 (11th Cir. 2004); *see Mala v. Marine Service Management*, 2009 WL 2170071, at *1 n.3. (D.V.I. 2009) (holding that before it would apply admiralty law to loss of consortium claim, "this Court must satisfy itself that its jurisdiction has been properly invoked."); *Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343, 1347 (S.D. Fla. 2008) (holding that "admiralty jurisdiction is a prerequisite for applying federal admiralty law") (citing *Norfolk. So.*, 543 U.S. at 23).

For a claim to fall under a district court's admiralty jurisdiction, a plaintiff must assert facts showing that the tort occurred on navigable waters and bore a substantial connection to maritime activity. *See Grubart v. Great Lakes Dredge & Dock Co*., 513 U.S. 527, 534 (1995). The first element – location – is easily satisfied.  Plaintiff was injured in the navigable waters surrounding St. Croix, satisfying the location test. *Id*. at 534; *Oran v. Fair Wind Sailing, Inc*., 2009 WL 4349321, at *5 (D.V.I. 2009) ("The incident occurred aboard the *Hound Dog* while sailing in the navigable waters off the coast of St. Thomas, which is sufficient to meet this

portion of the test."); *Piche v. Stockdale Holdings, LLC*, 2009 WL 799659, at *3 (D.V. I. 2009) (finding location test satisfied where injury occurred "on navigable water off the coast of St. Thomas.").

The second element – connection to maritime activity – is actually comprised of two separate inquiries. First, a court must assess the general features of the type of incident involved, to determine whether the incident has a potentially disruptive impact on maritime commerce. *Grubart*, 513 U.S. at 534 (citing *Sisson v. Ruby*, 497 U.S. 358, 363-64 (1990)). Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. *Id.*

Both of these inquiries are satisfied here. Courts have routinely found that tort claims against boat drivers arising out of striking swimmers in navigable waters, such as those here, are sufficiently connected to maritime activity to warrant admiralty jurisdiction. *See, e.g., Neely v. Club Med Management Services, Inc.,* 63 F.3d 166, 179 (3d Cir. 1995) (admiralty jurisdiction existed when the plaintiff, a scuba instructor on defendant's boat, was sucked under boat after boat unexpectedly engaged its engines); *Medina v. Perez*, 733 F. 2d 170, 171 (1st Cir. 1984) (admiralty jurisdiction existed with respect to tort action brought by swimmers who were hit by pleasure boat some 120 feet away from public beach in navigable waters); *Peemoller Sultan v. Pleasure Craft Contender 25'*, 139 F. Supp. 2d 230, 234 (D.P.R. 2001) (applying admiralty law to case involving a boat strike on a snorkeler near coast of Puerto Rico); *Schumacher v. Cooper*, 850 F. Supp. 438, 447 (D.S.C. 1994) ("Personal injury negligence actions arising from a

collision between a pleasure boat and a swimmer on a lake in South Carolina are within the admiralty jurisdiction of this court.").[4]

The only wrinkle is that it is far from clear that Plaintiff's claims against the Tamarind Reef Hotel, i.e., that the hotel was negligent because it failed to properly warn him of the dangers of swimming in the Green Cay Channel, are connected to maritime commerce. *See Campbell v. Starwood Hotels & Resorts Worldwide, Inc.*, 2008 WL 4609986, at *4 (S.D. Fla. 2008) (in a case involving a plaintiff who was struck by a boat at a beach resort, finding that "the activity giving rise to the incident centers on the scope of the duty Defendants owed to Plaintiff and thus has a substantial relationship on the hotel industry rather than traditional maritime activity. *The steps that a hotel must take to warn swimmers of a potentially dangerous condition has little impact on maritime commerce*.") (emphasis added).[5]

The federal admiralty jurisdiction statute, 28 U.S.C. § 1333, states that the "district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil *case* of admiralty or maritime jurisdiction . . . ." (emphasis added).  Courts have interpreted this to mean that if admiralty jurisdiction is appropriate in a case, admiralty law applies to the entire case, not just the claim conferring admiralty jurisdiction:

> The admiralty jurisdictional statute does not contain a limitation as to a certain category of parties, as does the [Federal Tort Claim Act] and the [Federal Employers Liability Act].  Nor does it contain a limitation as to a certain category of claims. Rather, it creates jurisdiction over an admiralty "case." Therefore,

---

[4] *See also Oran*, 2009 WL 4349321, at *5 (D.V.I. 2009) (finding that injury aboard boat in waters around St. Thomas had potential to disrupt maritime commerce) (collecting cases); *Donnelly v. Slingshot Sports LLC*, 605 F. Supp. 2d 613, 617 (D. Del. 2009) ("The potential disruption test has been construed broadly by courts to encompass cases involving swimmers injured by boats, recreational vessels that have spun out of control, people injured by failed equipment who might be in need of rescue assistance , and defective vessels where the injury may cause disruption to the vessel's navigation or to other craft.") (collecting cases).
[5] Notably, in *Campbell*, the boat driver was not a party.  *Id*.

> while the FTCA confers jurisdiction over claims "against the United States and no one else," admiralty jurisdiction extends to an entire case, including non-admiralty claims against a second defendant.

*Roco Carriers, Ltd. v. M/V Nurnberg Exp.*, 899 F.2d 1292, 1296-97 (2d Cir. 1990) (citing 28 U.S.C. § 1333(1)) (other citations omitted); *see Loeber v. Bay Tankers, Inc.*, 924 F.2d 1340, 1346-47 (5th Cir. 1991) ("The admiralty statute does not limit jurisdiction to a particular party, as do the FTCA and the Federal Employers' Liability Act (FELA) . . . . Neither does the act limit jurisdiction to a certain category of claims. Instead, it provides jurisdiction over an admiralty "case.") (citation omitted).  The Court finds these cases persuasive.  The language of the admiralty statute requires this Court to apply admiralty law to the entire "case," not just against certain defendants or to certain claims.

Having determined that admiralty law applies to this case, the Court now turns to the viability of Plaintiffs' loss of consortium claims.  Citing *Mala v. Marine Service Management*, 2009 WL 2170071 (D.V.I. 2009), Defendants move to dismiss those claims on the grounds that loss of consortium is not a recognized claim in admiralty law.  In *Mala*, the district court found that "[n]either the United States Court of Appeals for the Third Circuit, nor the United States Supreme Court have addressed the viability of such a claim. However, several federal appeals courts have refused to allow recovery on such a claim . . . loss of consortium is not a viable cause of action in a maritime personal injury case, and will dismiss this claim." 2009 WL 2170071 at *3 (citing cases).  This Court's research, however, indicates that whether the loss of consortium claim is barred by maritime law is not a settled question and may depend on facts not addressed in the FAC. [6]   *See, e.g., American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 276 (1980) (finding

---

[6] Indeed, some of the cases relied on by the *Mala* court involved claims by the wives of "seamen" and "mariners" under the Jones Act. *See Smith v. Trinidad Corp.*, 992 F.2d 996, 996

that wife of a harborworker who had lost an eye while working aboard a vessel in New York waters could bring a claim against the boat owner for loss of society.); *N.Y. & Long Branch Steamboat Co. v. Johnson*, 195 F. 740, 741-42 (3d Cir. 1912) (holding that the husband of a woman who was injured as a passenger on a steamboat from New York to Long Branch, New Jersey was allowed to maintain a suit in admiralty for loss of society); *see also Doyle v. Graske*, 579 F.3d 898, 906 (8th Cir. 2009) ("The Court in *Alvez* recognized a right to recover loss-of-consortium damages for nonfatal injuries to a spouse in the territorial waters of the United States . . . ."); *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1407 (9th Cir. 1994) ("In cases involving longshoremen injured or killed on state territorial waters, however, beneficiaries can recover loss of society damages . . . .We have also held that the beneficiaries of passengers killed or injured on state territorial waters can recover such damages.") (citing *Sea–Land Servs., Inc., v. Gaudet*, 414 U.S. 573, 584 (1973) *as limited by Miles v. Apex Marine Corp.*, 498 U.S. 19, 27–28 (1990) and *Sutton v. Earles*, 26 F.3d 903 (9th Cir. 1994)); *Isham v. Padi Worldwide Corp.* 2007 WL 2460776, at *19 (D. Hawai'I 2007) ("Because this action is based on alleged tortious conduct occurring in state territorial waters resulting in injury to individuals who are not claimed seamen and the conduct is not alleged to have occurred through the negligence of an employee, the Court concludes that the wives . . . may bring a cause of action for loss of consortium.").

Because the record before the Court is insufficient to resolve this issue, the Court will refrain from ruling on the viability of Plaintiffs' loss of consortium at this stage of the proceedings. *See Murray*, 958 F.2d at 129 (considering viability of plaintiff's loss of consortium

---

(9th Cir. 1993) (holding that "wives of injured *mariners* may no longer sue the ship for damages for their nonpecuniary losses, if any, caused by the injuries to the spouse.") (emphasis added); *Murray v. Anthony J. Bertucci Constr*. Co., 958 F.2d 127, 132 (5th Cir.1992), cert. denied, 506 U.S. 865 (1992) (holding "that the spouse of an injured *seaman* has no cause of action for loss of society under the general maritime law") (emphasis added).

claims because "the facts here are not in dispute" and "[b]oth parties have addressed this question fully in their briefs.").

### d.  Shotgun Pleading

Defendant contends that the FAC must be dismissed because it is a "shotgun pleading." "Shotgun pleading" refers to a complaint so confusing that "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."  *See Anderson v. District Bd. of Trustees of Cent. Florida Community College*, 77 F.3d 364, 366 (11th Cir. 1996). Defendants' contention notwithstanding, the Court has reviewed the FAC and found it be sufficiently clear to apprise Defendants of the claims against them.

### e.  Negligence

Plaintiff pleads several different theories of negligence against the Tamarind Reef Hotel Defendants – common law negligence (Count I), failure to warn (Count II), *res ipsa loquitor* (count IV), and negligence under the principles of Restatement (Second) of Torts § 314 (Count VII).  In order to survive a motion to dismiss, Plaintiff need only have pleaded a negligence cause of action under any viable negligence theory of recovery.  *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 562 (2007) (noting that a when court considers whether a complaint survives a motion to dismiss, it must determine whether it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."); *Terry v. Tyson Farms, Inc*., 604 F.3d 272, 275-76 (6th Cir. 2010) ("[T]o survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.") (citation omitted);

*Croskey v. BMW of North America, Inc.*, 532 F.3d 511, 515 (6th Cir. 2008) ("Plaintiff is entitled to plead and try to prove negligence under any of the alternative theories of negligence.").

"To state a claim for negligence in the Virgin Islands, a plaintiff must allege (1) a duty; (2) a breach of that duty; (3) causation; and (4) damages." *Matos v. Nextran, Inc.*, 2009 WL 2477516, at *6 (D.V.I. 2009) (citing *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 571 (D.V.I. 2004) and *Nickeo v. Atl. Tele-Network Co.*, 45 V.I. 149, 160 (V.I. Terr. Ct. 2003)); *see also* Restatement (Second) of Torts § 281 (1965) (stating the elements of negligence).[7]

In his FAC, Plaintiff alleges that Defendants owed him several duties including *inter alia*: to assess his experience level as a snorkeler (FAC ¶ 48(a)); warn him of the dangers of

---

[7] Courts in the Virgin Islands are statutorily instructed to apply the Restatement when there is no local law to the contrary. *See* 1 V.I.C. § 4. Virgin Island courts routinely apply the Restatement's principles to negligence claims, including those contested in Defendants' motion. *See, e.g., Fabend v. Rosewood Hotels and Resorts, L.L.C.*, 381 F.3d 152 (3d Cir. 2004) (applying section 314A to negligence claim arising from swimming on beach adjacent to defendant's resort); *Manahan v. Yacht Haven Hotel*, 821 F. Supp. 1105 (D.V.I. 1992) (applying section 314A to injuries incurred by plaintiff while walking back on street toward defendant hotel).

Although the Court has found that admiralty law applies to this case, Defendants make no argument that Virgin Islands' negligence law conflicts in any way with admiralty law. Accordingly, the Court will apply Virgin Islands' law to Plaintiff's negligence claim. *See Just v. Chambers*, 312 U.S. 383, 388 (1941) ("With respect to maritime torts we have held that the State may modify or supplement the maritime law by creating liability which a court of admiralty will recognize and enforce when the state action is not hostile to the characteristic features of the maritime law or inconsistent with federal legislation."); *see also Becker v. Poling Transp. Corp.*, 356 F.3d 381, 388 (2nd Cir. 2004) ("federal maritime law incorporates common law negligence principles generally, and [state] law in particular"); *Wells v. Liddy*, 186 F.3d 505, 525 (4th Cir. 1999) (holding that in the absence of a well-defined body of maritime law relating to a particular claim, the general maritime law may be supplemented by either state law or general common law principles); *Smolnikar v. Royal Caribbean Cruises Ltd.*, __F. 2d__, 2011 WL 2066768, at *5 (S.D. Fla. 2011) ("In the absence of well-developed maritime law pertaining to [plaintiff's] negligence claims, I will incorporate general common law principles and Florida state law to the extent they do not conflict with federal maritime law.").

snorkeling in the Green Cay Channel (*id.* at ¶¶ 48(b)-(e)); and provide him with proper snorkel equipment and a dive buoy capable of warning surface traffic about submerged snorkelers. (*Id.* at ¶¶48(g)-(h))  Defendants contend that, under the facts pleaded in the FAC, they owe him no duties as a matter of law.[8]  First, they argue that they had no duty to Plaintiff while he was in the Green Cay Channel and thus outside the sphere of their control.  Second, Defendants contend that the unreasonable risks complained of by Plaintiff were open and obvious such that they had no duty to warn him of them.

### i.  Was the Green Cay Channel Within the Tamarind Reef Hotel's Sphere of Control?

Citing Restatement (Second) of Torts § 314A, *cmt. c* (1965), the Tamarind Reef Hotel Defendants contend that as "innkeepers," they cannot be held liable for Plaintiff's injuries suffered in the channel because they owe no duty to Plaintiff while he was away from the hotel. Restatement (Second) of Torts § 314A states in pertinent part that:

> (1) A common carrier is under a duty to its passengers to take reasonable action
>      (a) to protect them against unreasonable risk of physical harm, and
>      (b) to give them first aid after it knows or has reason to know that they are
>      ill or injured, and to care for them until they can be cared for by others.
> (2) *An innkeeper is under a similar duty to his guests*.

*Comment c* to section § 314A states:

> The rules stated in this Section apply *only where the relation exists between the parties, and the risk of harm, or of further harm, arises in the course of that relation*. A carrier is under no duty to one who has left the vehicle and ceased to be a passenger, nor is an innkeeper under a duty to a guest who is injured or

---

[8]  The existence of a duty is an issue of law that may properly be the subject of a motion to dismiss.  *See Port Authority of New York and New Jersey v. Arcadian Corp.*, 189 F.3d 305, 309 (3d Cir. 1999) (holding that dismissal under Fed. R. Civ. P. 12(b)(6) of Port Authority's negligence claim was proper when defendant owed no duty to plaintiff as a matter of law).

> endangered *while he is away from the premises*. Nor is a possessor of land under
> any such duty to one who has ceased to be an invitee.

(emphasis added).

Plaintiff counters that section 314A does not limit the Tamarind Reef Hotel's liability because its duties to him arose not simply from his status as a guest of the hotel, but from the fact that it rented him snorkel gear and encouraged him to swim in a dangerous area without properly warning him of the risks.

The Third Circuit most recently addressed section 314A in *Fabend v. Rosewood Hotels and Resorts, L.L.C.*, 381 F.3d 152 (3d Cir. 2004).  There, the Fabends were staying at the Cinnamon Bay Campground (on the island of St. John in the U.S. Virgin Islands), operated by Rosewood Hotels and Resorts ("Rosewood").  *Id.* at 153.  Rosewood had a limited and non-exclusive right to operate a campground and related services on national park land adjacent to Cinnamon Bay beach, pursuant to an  agreement with the National Park Service. Rosewood also rented cabins and operated a restaurant, beach store, and watersports center.  *Id.*  Richard Fabend broke his neck while bodysurfing in the waves off the Cinnamon Bay beach.  He sued Rosewood for his injuries, claiming that it negligently failed to warn him of the dangerous (and unseen) shorebreak condition off of Cinnamon Bay beach. [9]  *Id.* at 154-55.

Rosewood moved for summary judgment on the grounds that Fabend's injury occurred on the shore – not on its premises – and that it had no duty to warn of dangers not found on its premises.   The district court agreed and granted summary judgment.  In affirming the district

---

[9] "A shorebreak exists where the water rapidly becomes shallow as it approaches the shore, resulting in waves that can break with tremendous force and drive swimmers into the sand." *Id.* at 154-55.

court's summary judgment order, the Third Circuit applied section 314A and found that Rosewood owed Fabend no duty to warn of the shorebreak condition, as a matter of law, because the beach was outside Rosewood's "sphere of control." *Id*. at 160.

> In discussing the sphere of control test, the Court held that:

> As Comment c makes clear, the duty to protect, and hence the duty to warn, *exists only where the risk arises from the relationship*, and it is not alone sufficient that a guest is exposed to a risk during the period he remains such . . . A risk arises in the course of the relationship only if it occurs on the relevant premises . . . The specific factual setting of a case will ultimately dictate whether a party is in the position to control or has the power to control land adjacent to his property such that a duty to protect or warn arises . . . The "sphere of control" test requires that we look at the circumstances of the case to ascertain whether sufficient control exists over the adjacent premises. Relevant indicia of control include who is responsible for the safety of guests, who has the authority to dictate who may use the property, and *whether the guests were invited by the property owners to use the adjacent land.*

*Id*. at 155-56 (citing *Pacheco v. United States*, 220 F.3d 1126, 1131-32 (9th Cir. 2000) (emphasis added)).   The Court went on to find that "Rosewood had no actual authority to control the swimming area where Fabend was injured. The *National Park Service* retained that authority and exercised it by promulgating regulations governing activities there and, indeed, *publishing warnings of risks to be found there* . . . there is no evidence from which a jury could find that [Rosewood] exercised control over the swimming area." *Id*. at 157 (emphasis added).

Here, unlike the plaintiffs in *Fabend*, Plaintiff has pleaded that the unreasonable risk that the hotel should have warned him of (boats in the channel) arises from the fact that he was rented snorkel gear by the hotel and implicitly told that it was safe to snorkel in the Green Cay Channel. He alleges that during his conversation with Greenhalgh, who was running the Scuba Shack, he asked her whether he could swim to an island across the channel; that she responded "Yes, people do it all the time," rented him snorkel gear, and then walked him down to an area where

15

he could safely enter the water to begin snorkeling.  (FAC ¶¶ 34, 36)  He also alleges that the Tamarind Reef Hotel knew of at least one prior snorkeling accident in the immediate vicinity. (*Id.* ¶ 54)   From these facts, the Court can reasonably infer that the Tamarind Reef Hotel "invited" him to swim in the "adjacent" waters, yet failed to properly equip or warn him.  The proximity of the Green Cay Channel and island to the Tamarind Reef Hotel combined with Greenhalgh's identifying the island as a suitable destination for Plaintiff's snorkeling activities and then renting him snorkeling gear with the knowledge that he intended to swim there arguably puts the Green Cay Channel within the sphere of Tamarind Reef Hotel's control, at least for the purposes of Plaintiff's snorkeling activities.   In other words, it is plausible that the Tamarind Reef Hotel owes a duty of care to those that it rents snorkel gear to and then sends to swim in waters adjacent to its premises.  *Cf. Fabend*, 381 F.3d at 159.  (noting that Fabend "was not using any equipment at the time of his accident, much less any equipment purchased or rented from the appellees.").

This finding is supported by a case cited with approval by the *Fabend* Court, *Pacheco v. United States,* 220 F.3d 1126 (9th Cir. 2000).   In *Pacheco*, the plaintiffs alleged that the Pachecos had visited Pfeiffer Beach in Big Sur, California and paid the National Park Service to enter and use the beach.  *Id.* at 1127-28.  When the Pachecos paid the fee, they were given two plastic toy buckets for use on the beach.  One of the toy buckets was perforated to let sea water drain out when a child used it to play in the surf. While eight year old Ivy Pacheco was wading in a calm portion of the water, the surf rolled up on the beach, caught her, and the riptide swept her out into the ocean where she drowned. Her mother and her grandmother both rushed to save

Ivy, but they too were caught by the riptide and carried into the ocean where they also drowned. *Id*. at 1128.

Ivy's father then sued the United States for negligence for failing to warn of the dangerous riptide. *Id*. at 1128-29. The Government moved for dismissal. The district court dismissed the claims finding that "plaintiff's allegations did not establish that defendants had a duty to warn or guard against the naturally occurring dangers in the ocean adjacent to the Beach because, under California law, adjacent land owners cannot control the ocean." *Id.* at 1129. The Ninth Circuit reversed finding that:

> [B]y handing out toys that implicitly suggested that children play in the water and by instructing beach-goers on all the things they should not do yet omitting any instructions about children playing in the water, *the landowner did create the danger* . . . While there was no express representation that the ocean adjacent to the Beach was suitable for wading, appellant alleges that at the time the Pachecos paid their entry fee to the Beach, they were given two plastic toy beach buckets for use at the Beach, one of which had a perforated bottom suitable for draining sea water. Supplying perforated buckets *could be construed as encouraging children to use the water in their beach play as well as representing that such action would be safe*.

*Id*. at 1131-32 (emphasis added).

The upshot of *Pacheco* is that a landowner may incur a duty of care over adjacent premises when it encourages people to use those adjacent premises and derives financial profit thereby.[10] The FAC pleads that situation. *See also Isham*, 2007 WL 2460776, at *12 (finding

---

[10] Indeed, other cases cited by Defendants highlight the relevance of a commercial transaction to section 314A's "sphere of control" test. For example, in *Adika v. Beekman Towers, Inc.*, 633 So.2d 1170 (Fla. App. 1994), the court distinguished *McKinney v. Adams*, 66 So. 988 (Fla. 1914), which held that the operator of a seaside bathhouse on a public beach was negligent in failing to provide lifeguards and safety equipment and was liable for the drowning of one of its patrons, and found that under section 314A, the Beekman Towers hotel owed no duty to a guest

that plaintiff had stated negligent misrepresentation claim against scuba dive company because defendants had a "pecuniary interest in the transaction or context in which the information is supplied."). The Court finds that, at this stage of the proceedings, section 314A does not bar Plaintiff's negligence claims.

In their briefs, Defendants cite several cases finding that a landowner was not liable for injuries suffered by a plaintiff on adjacent public land. All of these cases, however, are easily distinguished on the basis that the hotel played no part in creating the danger or risk that caused the plaintiff's injuries. For example, in *Jones v. Halekulani Hotel*, the plaintiff was injured when he dove off a "seawall easement" adjacent to the Halekulani Hotel. 557 F.2d 1308, 1309 (9th Cir. 1977). On summary judgment, the Ninth Circuit found that the hotel owed no duty to the plaintiff because the wall was a "public thoroughfare," that it did not exercise any control over

---

to warn of dangerous surf conditions at a nearby public beach, in part because the hotel did not rent equipment to be used on the beach:

> The defendant in *McKinney* operated a public bathhouse and *profited from the rental of equipment expressly intended for use while swimming in the adjacent Atlantic Ocean*. Although Beekman Towers was located adjacent to a public beach, whether or not guests swam in the ocean was a matter of individual choice, and was not *intrinsically linked* to the hotel's business.

*Id.* at 1170 (emphasis added).

Similarly, in *Poleyeff v. Seville Beach Hotel Corp.*, 782 So.2d 422, 424 (Fla. App. 2001), the court also distinguished *McKinney* and held that the defendant hotel and beach concessionaire were not liable for the death of two beach goers who were sucked out from the beach by riptides. The court found that the defendants had no duty to warn of the riptide but noted that its holding would be different if the defendants "rented a water craft for use in an area of the ocean in which it was aware that rip currents were present." *Id.* at 424, n.4. That situation is present here. Plaintiff alleges that the Tamarind Reef Hotel rented snorkel equipment for use in an area in which it was aware of boat traffic.

the wall and that even if it had such control it was "irrelevant unless that exercise created the dangerous condition." *Id*. at 1311.  In contrast, the Plaintiff here alleges that the Tamarind Reef Hotel created the danger by renting him snorkel gear after suggesting that it was safe for him to swim across the Green Cay channel without warning him about boat traffic.

Similarly, in *Kosick v. Bar-Sela*, the Virgin Islands Superior Court held that a property owner (Muller Bay) was not liable for a dog bite that occurred on a portion of its property that it had to keep open by virtue of the Virgin Islands Open Shores Act, 12 V.I.C. § 402-403.[11]  2007 WL 2362699, at * 2-3 (V.I. Super. 2007).  On summary judgment, the court found that Muller Bay could not be held liable, as a matter of law, because it was statutorily prohibited from restricting access to the beach, including by erecting fences, and that it was undisputed that the attack took place in the public access area of the shore covered by the Open Shores Act.  *Id.* at 2. The court also noted that the plaintiff was aware of the risk of the wild dogs, having seen them try to attack her own dog on a previous occasion.  *Id*. at 5.  *Kosick* might be relevant if Muller Bay had invited Kosick to the beach for a business reason, knew that feral dogs were roaming the shore and done nothing to warn Kosick of that risk.  However, there was no evidence that the landowner did anything to encourage the presence of the plaintiff or the feral dogs on the beach. In fact, the Superior Court distinguished *Pacheco*, discussed above, on the basis that "the beach in [*Pacehco*] was advertised, user fees were charged and the victim was a social guest."  *Id*. at 4.

---

[11] The Open Shores Act guarantees the public the right to access all beaches and shorelines in the Virgin Islands and prohibits any person or entity from restraining or interfering "with the right of the public individually and collectively, to use and enjoy any shoreline."  12 V.I.C. § 403.  The act does not immunize against torts occurring on the shoreline; it only ensures that the public has access to the shorelines.  That the Tamarind Reef Hotel could not prevent Plaintiff from enjoying the beach and entering the ocean has little bearing on whether it faces liability for renting equipment to Plaintiff and encouraging him to swim in an area it knew to be dangerous.

Finally, Defendants cite *Manahan v. Yacht Haven Hotel*, 821 F. Supp. 1105 (D.V.I. 1992), *reconsideration denied,* 821 F. Supp. 1110, *aff'd without opinion,* 995 F.2d 218 (3d Cir. 1993). In *Manahan*, a hotel guest sued the Yacht Haven Hotel under a negligence theory for physical injuries she sustained when she was mugged while walking down a darkly lit street on her way back to the hotel from a local restaurant, alleging that the hotel failed to warn her of the heightened risk of crime in St. Thomas. *Id.* at 1106. The court granted summary judgment to defendant finding that, under section 314A, "an innkeeper is under a duty to its guests to take reasonable action to protect them against unreasonable risk of physical harm. [citation] However, such proprietor is not bound to anticipate and guard against the unusual or abnormal, or against something which reasonable care, skill, or foresight could not have discovered or prevented." *Id.* at 1108 (citing Restatement (Second) of Torts § 314A and 40 Am. Jur. 2d, Hotels, Motels, and Restaurants § 111 (1968)). The court found that to the extent that a duty to warn plaintiff about crime in St. Thomas existed, it had been discharged when the hotel advised plaintiff at an official briefing to hotel guests that the only safe way to travel at night in St. Thomas was by taxi and that the hotel had no special duty to investigate potential crime in the area because it had no prior knowledge that any of its patrons or other tourists in St. Thomas had ever been the victim of crime in the vicinity of where plaintiff was injured. *Id.* at 1109. In sharp contrast, here, Plaintiff alleges that he was given no warnings at all and that the Tamarind Reef Hotel had prior knowledge of a boat striking a snorkeler in the area where it encouraged Plaintiff to swim. Thus, at this stage of the proceedings, *Manahan* is of no help to Defendants.

**ii.   Were the Dangers Complained of by Plaintiff "Open and Obvious?"**

Citing Restatement (Second) of Torts § 343A, Defendants argue that they had no duty to warn of the dangers complained of by Plaintiff because they were open and obvious.   Section 343A is entitled "Known or Obvious Dangers" and states:

> (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.
>
> (2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.

Under this section, a landowner does not owe a duty to warn its guests of obvious dangers.   Whether a danger is obvious is an objective test that questions whether a reasonable person in plaintiff's shoes should have been aware of the danger.   Restatement (Second) of Torts § 343A, *cmt. e* ("Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them.").   However, unless there are uncontroverted facts that a plaintiff was aware of the specific danger, "the issue of whether a danger was 'known or obvious' generally is a question of fact for a jury." *Monk v. Virgin Islands Water & Power Authority,* 53 F.3d 1381, 1388 (3d Cir. 1995); *see also Roberts v. Kmart Corp.,* 2011 WL 2975886, at *2 (D.V.I. July 21, 2011) (denying motion for summary judgment because issue of whether plaintiff was aware of spill on store floor was a question of fact for the jury); *Zinn v. Gichner Sys. Group*, 880 F. Supp. 311, 316 (M.D. Pa.1995) ("The question of whether a danger was known or obvious is usually a question of fact for the jury.") (citation omitted).   To

21

the point, every case cited by Defendants in support of this argument is a summary judgment case.  *See Younger v. Virgin Islands Yacht Harbor, Inc*., 1993 WL 13031390 (D.V.I. 1993) (summary judgment); *Manahan v. Yacht Haven Hotel*, 821 F. Supp. 1110 (D.V.I. 1992) (same); *Cutchin v. Habitat Curacao-Maduro Dive Fanta-Seas, Inc.*, 1999 WL 33232277 (S.D. Fla. 1999) (same).

Here, Plaintiff alleged that he did not "see any boats or other vessels" when he began swimming toward the island. (FAC ¶ 37)  The Court must accept this allegation as true.  Even if the FAC had been silent on whether Plaintiff was aware of boat traffic in the channel, at the motion to dismiss stage, there is simply no way for the Court to find that, as a matter of law, guests of the Tamarind Reef Hotel should objectively be aware that there is boat traffic in the Green Cay Channel.[12]  Accordingly, the Court cannot find that the dangers complained of in the FAC were open and obvious as a matter of law.

### f.   Piercing the Corporate Veil

In addition to suing the Tamarind Reef Hotel, Plaintiff and his wife also sue the hotel owner Defendants individually for the negligence of the hotel.  A plaintiff may not ordinarily sue the owners of a corporation for the negligent acts of the corporation unless "it can be shown that the shareholder or officer is doing business in his or her individual capacity without regard to corporate formality, that is, whether it is appropriate to pierce the corporate veil."  *Matheson v. Virgin Islands Community Bank, Corp.*, 297 F. Supp. 2d 819, 833 (D.V.I. 2003) (internal

---

[12] Defendant argues that because Plaintiff was a member of United States Air Force at the time of incident, he must have been aware of the potential for vessels to be present in the channel. That fact, however, by itself, is insufficient to support a finding by this Court that he was aware of the presence of boats in the Green Cay Channel.

quotations and citations omitted).  "Piercing the corporate veil is 'an equitable remedy whereby a court disregards the existence of the corporation to make the corporation's individual principals and their personal assets liable for the debts of the corporation.'" *Id.* at 833 (quoting *Pearson v. Component Technology Corp.*, 247 F.3d 471, 484 (3rd Cir. 2001)).  In deciding whether to pierce the corporate veil, courts consider the following factors: (1) whether the corporation suffers from gross undercapitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of debtor corporation; (5) siphoning of funds from the debtor corporation from the dominant stockholder; (6) nonfunctioning of officers (7) absence of corporate records, and (8) whether the corporation is merely a facade for the operation of the dominant stockholder.  *Id*.

To survive a motion to dismiss, a plaintiff seeking to pierce the corporate veil must plead more than conclusory allegations that the individual owners abused the corporate form.  *Essex Ins. Co. v. Miles*, 2010 WL 5069871, at *3 (E.D. Pa. 2010) (finding allegation that defendants "failed to observe corporate formalities, intermingled funds, used corporate property for personal expenses, left RMJC grossly undercapitalized, and used RMJC as a facade or alter ego" were "merely a formulaic recitation of the elements of a cause of action for piercing the corporate veil" and thus insufficient to sustain a claim); *Partners Coffee Co., LLC v. Oceana Services and Products Co.*, 700 F. Supp. 2d 720, 737 (W.D. Pa. 2010) ("In the absence of anything more than a recitation of the elements necessary to hold [the individual defendants] liable under the piercing of the veil theory or the alter ego theory, [the count against them] will be dismissed in its entirety."); *Shenango Inc., v. American Coal Sales, Inc.* 2007 WL 2130869, at *4 (dismissing veil piercing claim because it was filled with legal conclusions devoid of "any facts regarding the

time, place or manner of actual conduct"); *Matheson*, 297 F. Supp. 2d at 833 ("It is not enough to make mere conclusory allegations that the shareholder is an 'alter-ego' of a corporation.") (citation omitted).

Here, as in *Essex, Partners Coffee* and *Shanango*, Plaintiff's veil piercing allegations, although prodigious, are really just a recitation of the veil piercing factors.  For example, in paragraph 27 of the FAC, Plaintiff alleges that the Tamarind Reef Defendants:

> share services, share assets, share personnel, ignore corporate formalities, are inadequately capitalized, are inadequately insured, fail to maintain an "arm's length" relationship with each other and with related entities, manipulate assets or liabilities to concentrate the assets or liabilities, commingle funds, divert assets and operate as a single business entity on the behalf of the Owners.

Plaintiff does not allege what services, assets, or personnel are shared by the Defendants, how the Tamarind Reef Hotel is inadequately capitalized or insured or how funds were manipulated, commingled or diverted.  The other veil piercing allegations similarly fail to contain any factual details regarding the hotel owner Defendants' alleged abuse of the corporate form.  (*See* FAC ¶¶ 17-28)  Accordingly, the Court finds that Plaintiff has failed to plausibly allege facts supporting his claims against the hotel owner Defendants and dismisses them from the case.[13]

---

[13] Plaintiff argues that he should be allowed discovery regarding his veil piercing claim under *Toys R Us., Inc. v. Step Two*, 318 F.3d 446 (3d Cir. 2003).  *Toys R Us*, however, stands for the proposition that courts should allow a party "jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'"  *Id*.  Jurisdictional discovery is discovery limited to determining whether the Court has personal jurisdiction over a party.  *See Francis v. Bridgestone*, 2011 WL 2650599, at *11-12 (D.V.I. July 6, 2011).  Here, Plaintiff is not seeking jurisdictional discovery; rather he is seeking discovery that goes to the merits of his veil piercing claim.  In rejecting an identical request for discovery regarding an insufficient veil piercing claim, the *Essex* court noted that the "Supreme Court precludes the use of even limited discovery to overcome a pleading insufficiency. As the Court stated in *Iqbal*, Rule 8 'does not unlock the doors of discovery for a

### g.  Punitive Damages

In Count V, Plaintiff alleges that the Defendants' conduct amounts to gross negligence and entitles him to punitive damages.  (FAC ¶¶ 70-72)  Defendants move to dismiss this claim on the grounds that Plaintiff has not properly alleged a claim for punitive damages.  Fed. R. Civ. P. 12(b)(6) requires a plaintiff to plead facts sufficient to support a punitive damages claim. *Thomas,* 2011 WL 1637471, at *3. To sustain a punitive damages claim in the Virgin Islands, a plaintiff must allege facts demonstrating that the defendant acted outrageously and with an evil motive or with a reckless indifference to the rights of others. *Id.* at *3 n.1 (citing *Acosta,* 53 V.I. at 782); *see also* Restatement (Second) of Torts § 908(2) ("Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.").

Here, construing the FAC in the light most favorable to Plaintiff, the Tamarind Reef Hotel rented him snorkel gear and encouraged him to snorkel through the Green Cay Channel without providing him any warnings or a diver buoy despite its knowledge that a snorkeler had been struck by a vessel in the area.  While a close call, the Court finds that Plaintiff has alleged facts plausibly suggesting that the Tamarind Reef Hotel acted recklessly in that it knowingly sent Plaintiff out into a dangerous area without properly equipping or warning him. [14]

---

plaintiff armed with nothing more than conclusions.'" *Essex*, 2010 WL 5069871, at *3 (E.D. Pa. 2010) (quoting *Iqbal*, 129 S.Ct. at 1950).

[14] Defendants also move to dismiss this claim on the grounds that Plaintiff improperly alleged a "standalone" claim for punitive damages.  *See Matos*, 2009 WL 2477516, at *7 ("[I]t is well-established law that a punitive damages claim cannot stand alone.") (citations omitted).  Here, however, Plaintiff has tethered his punitive damages claim to his gross negligence cause of action, which, while questionable in and of itself, *see Thomas*, 2011 WL 1637471, at *3 (gross

### h.  Strict Liability

In Count VI, Plaintiff alleges that Defendants are strictly liable for his injuries.  (FAC ¶¶ 73-80)  Defendants attack this claim on the basis that Plaintiff has failed to plead a products liability cause of action.  A quick review of the FAC supports Defendants' contention.  Plaintiff does not allege that a defective product caused his injuries nor does he argue as much in his opposition.  Accordingly, the Court dismisses Plaintiff's strict liability claim.[15]

### III.  __Conclusion__

Plaintiff has adequately pleaded a negligence claim against the Tamarind Reef Hotel, but has failed to properly allege a strict products liability claim.  Plaintiffs' claims against the individual hotel owner Defendants must also be dismissed as they have not pleaded facts sufficient to pierce the corporate veil.   Accordingly, for the reasons discussed above, it is hereby,

**ORDERED** that Defendants' Motion to Strike is **GRANTED**;

**ORDERED** that Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART;**

---

negligence does not require a finding of recklessness while punitive damages does so require), does not merit dismissal, as Plaintiff's complaint contains enough factual detail to support a claim for punitive damages.

[15] In his opposition, Plaintiff argues that principles of strict liability have been incorporated into admiralty law and that he may therefore avail himself of that theory.  Courts have only incorporated strict liability principles into admiralty claims when they involve allegations of a defective product.  This is made abundantly clear in the primary case cited by Plaintiff, *Pan-Alaska Fisheries, Inc. v. Marine Const. & Design Co*., 565 F.2d 1129 (9th Cir. 1977) where the Court held that "strict *products* liability actions have become sufficiently well-established to justify its being incorporated into the law of admiralty." *Id*. at 1134 (emphasis added).

**ORDERED** that Plaintiff's strict liability claim (Count VI) is **DISMISSED**;

**ORDERED** that all claims in the **FIRST AMENDED COMPLAINT** against Defendants Brandt, Mosler, and Saunders are **DISMISSED**;

**ORDERED** that Defendants' Motion to Dismiss is **DENIED** in all other respects;

**ORDERED** that Plaintiffs shall have fourteen (14) days from the date of this Order to file a **SECOND AMENDED COMPLAINT**, correctly listing the existing Defendants and causes of action in conformity with this Memorandum Opinion and Order;

**ORDERED** that Plaintiffs must seek leave of the Court to add additional factual allegations to the **SECOND AMENDED COMPLAINT**;

**ORDERED** that Defendants shall have fourteen (14) days from the date of the filing of the **SECOND AMENDED COMPLAINT** within which to file a response.

**ENTER**:

Dated: September 19, 2011                    _____/s/_____
                                             RAYMOND L. FINCH
                                             SENIOR U.S. DISTRICT JUDGE

27